IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MEL TYRONE EDWARD,

    Plaintiff,     No. CIV S-03-2584 LKK KJM P

    vs.

S. SCARSELLA, et al.,     ORDER AND

    Defendants.     FINDINGS & RECOMMENDATIONS

_____/

    Plaintiff is a state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983.  In his verified complaint, plaintiff alleges that the defendants attacked him during a cell extraction, punching and kicking him after immobilizing him with pepper spray. Plaintiff also alleges that defendant Scarsella punched him after he was immobilized on a gurney. Complaint (Compl.) at 3-4.  Plaintiff and defendants Caldero, Correa and Matthews have now moved for summary judgment.  Defendants Saunders and Scarsella have opposed plaintiff's motion, but have not filed their own motions for summary judgment.  Plaintiff also has filed two motions to compel discovery.

/////

/////

/////

I. Summary Judgment

    A. Standards For Summary Judgment

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the

dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On August 6, 2004, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

B.  Factual Background

In June 2002, defendant Scarsella was in charge of C-Facility at California State Prison-Sacramento (CSP-Sacramento). Mem. P. & A. in Supp. of Mot. for Summ. J. by Def'ts Caldero, Correa & Matthews (Def'ts' MSJ), Decl. of J. Caldero (Caldero Decl.) ¶¶ 2-3; Def't Scarsella's Opp'n to Pl.'s Mot. For Summ. J. (Scarsella Opp'n), Decl. of Stephen Scarsella (Scarsella Decl.) ¶ 1. On June 8, Scarsella was informed that plaintiff had threatened an officer; after meeting with plaintiff, Scarsella decided to move plaintiff to administrative segregation. Caldero Decl. ¶ 4; Scarsella Decl. ¶ 2. Plaintiff was taken to his cell to pack his property before moving. Def'ts' MSJ, Decl. of A. Correa (Correa Decl.) ¶ 4. After thirty minutes, plaintiff told Correa he was not going to leave his cell; Correa and Caldero conveyed this information to Scarsella. Correa Decl. ¶¶ 5-6; Caldero Decl. ¶ 7; Scarsella Decl. ¶ 3.

Scarsella and defendant Saunders went to the door of plaintiff's cell and spoke to him, but plaintiff refused to leave the cell. Def't Saunders' Opp'n to Pl.'s Mot. For Summ. J. (Saunders Opp'n), Decl. of Richard Saunders (Saunders Decl.) ¶ 3; Scarsella Decl. ¶ 4; Compl. at 3.[1] When plaintiff moved toward Scarsella and Saunders, they used pepper spray on him. Scarsella Decl. ¶ 4; Saunders Decl. ¶ 3; Correa Decl. ¶ 8; Def'ts' MSJ, Decl. of A. Matthews (Matthews Decl.) ¶ 7. Plaintiff avers that defendants used pepper spray on him for thirty to forty-five minutes; Scarsella claims he used the spray in short bursts of one to three seconds' duration each; Matthews estimates that the application of pepper spray did not last more than ten minutes. Compl. at 3; Scarsella Decl. ¶ 4; Matthews Decl. ¶ 7.

---

[1] The court may treat plaintiff's verified complaint as an opposing affidavit. McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir.1987) (per curiam),

4

When plaintiff still refused to come out, Scarsella ordered Saunders and others to remove plaintiff from the cell. Matthews Decl. ¶ 9; Saunders Decl. ¶ 4. Scarsella was concerned that the exposure to the pepper spray had given plaintiff an asthma attack. Scarsella Decl. ¶ 5. Saunders entered first, using a protective shield to push plaintiff down on his bunk. Saunders Decl. ¶ 4; Matthews Decl. ¶ 10. Saunders and Matthews then handcuffed plaintiff. Matthews Decl. ¶ 11; Scarsella Decl. ¶ 6. Scarsella describes a "lengthy struggle" that preceded the handcuffing; Saunders says that plaintiff was aggressive and "thrash[ed] about," but Saunders used the minimum amount of force to subdue a "combative" inmate." Plaintiff claims he was hit and punched by all the defendants before, during and after the application of the handcuffs. Scarsella ¶ 6; Saunders Decl. ¶¶ 4, 6; Compl. at 3.[2] Correa avers he did not strike plaintiff and suggests he was not in the cell during the extraction. Correa Decl. ¶¶ 11-12, 16. Caldero also suggests he had not entered the cell and avers that he did not strike plaintiff. Caldero Decl. ¶¶ 12-14, 24. Matthews denies striking plaintiff and claims to have used only the force necessary to handcuff plaintiff under the circumstances. Matthews Decl. ¶ 23.

Plaintiff still refused to walk after the handcuffs were on, so Matthews and Scarsella and perhaps Saunders dragged plaintiff out of the cell. Matthews Decl. ¶ 12; Scarsella Decl. ¶ 6; but see Saunders Decl. ¶ 5 (saying he left the cell after plaintiff was handcuffed and did not remove him from the cell). Plaintiff was put in leg restraints. Caldero Decl. ¶ 15; Scarsella Decl. ¶ 6. According to Caldero, Matthews and plaintiff, Scarsella grabbed the chain connecting the handcuffs and began to drag plaintiff down the stairs. Caldero Decl. ¶ 16; Matthews Decl. ¶ 14; Compl. at 3. Scarsella says he carried, but did not drag, plaintiff down the stairs. Scarsella Decl. ¶ 8. Matthews and Caldero lifted plaintiff by the shoulders so he would not hit his head. Matthews Decl. ¶ 15; Caldero Decl. ¶ 17. Plaintiff says he was dropped as he

---

[2] Plaintiff has submitted what he describes as a sworn statement from Zuri Young, an inmate "ear and eye" witness. Pl.'s MSJ, Ex. B. However, this statement was not submitted under the penalty of perjury and therefore is not admissible in support of plaintiff's motion. Fed. R. Civ. P. 56(e).

was moved down the stairs, but Matthews and Caldero deny dropping him or seeing anyone else drop plaintiff. Pl.'s MSJ Brief at 3[3]; Matthews Decl. ¶ 16; Caldero Decl. ¶ 18. Matthews concedes he was unable to maintain his hold on plaintiff as they moved down the stairs, so he put plaintiff down. Matthews Decl. ¶ 17. Correa says he did not participate in moving plaintiff downstairs. Correa Decl. ¶ 15.

Once on the ground floor, plaintiff was placed on a gurney. Scarsella Decl. ¶ 9; Matthews Decl. ¶ 18; Caldero Decl. ¶ 19; Compl. at 3. According to Matthews and Caldero, plaintiff and Scarsella traded insults. Matthews Decl. ¶ 19; Caldero Decl. ¶ 21. Scarsella struck plaintiff twice in the face unexpectedly. Matthews Decl. ¶¶ 20-21; Caldero Decl. ¶¶ 21-22; Compl. at 3-4. Scarsella denies hitting plaintiff. He says plaintiff was thrashing on the gurney and, worried that plaintiff would fall off, he put a hand on the gurney railing. Scarsella Decl. ¶ 9. He blocked plaintiff's head and pushed it away because he feared plaintiff would bite him. Id. ¶ 10.

C. Analysis

Broadly speaking, "[a]fter incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal quotation marks omitted). Determining whether an Eighth Amendment violation has occurred depends on the context in which the action takes place. Deference is to be given to the quick decisions officers must make when responding to a confrontation with "riotous inmates." Whitley 475 U.S. at 320-22. A deferential standard applies even in the case of "a lesser disruption," so long as it is necessary for guards to use force to keep order. Hudson v. McMillian, 503 U.S. 1, 6 (1992). In the case of

/////

/////

---

[3] This brief was submitted under penalty of perjury and will be considered as a declaration.

resistance, the determinative question is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm." Id. at 7.

The Ninth Circuit has relied on the Hudson factors in determining whether an officer's application of force was applied in a good faith effort to restore discipline. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003). These factors are: 1) the extent of the injury suffered by an inmate; 2) the need for application of force; 3) the relationship between that need and the amount of force used; 4) the threat reasonably perceived by the responsible officials; and 5) any efforts made to temper the severity of a forceful response. Id.

According to the Ninth Circuit, Hudson mandates that the Whitley standard apply in all cases of excessive force claims against prison officials. Lemaire v. Maas, 12 F.3d 1444-53 & n.2 (9th Cir. 1993). However, when there is no obvious disturbance, it is crucial to look at the two elements of the Eighth Amendment inquiry. These elements are: 1) the deprivation must be sufficiently serious and 2) the officer must have acted with a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298 (1991). There is no requirement that the inmate suffer serious injury in order to make out a claim of an Eighth Amendment violation. Hudson, 503 U.S. at 9. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Id.

1. Pepper Spray

> [P]epper spray is an instrument with which prison officers wield their authority, or force, and thus its use implicates the excessive use of force.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> Whether defendants' use of the spray was objectively harmful enough to violate plaintiff's Eighth Amendment rights turns in part on how long plaintiff was sprayed and whether he was adequately irrigated afterwards or left to suffer unnecessarily. The parties dispute these issues. They also disagree as to whether defendants sprayed plaintiff in a good faith effort to restore discipline or maliciously or sadistically for the purpose of causing harm.

7

<u>Norton v. The City Of Marietta, OK</u>, 432 F.3d 1145, 1154 (10th Cir. 2005) (internal quotation, citation omitted); <u>see also</u> <u>Clement v. Gomez</u>, 298 F.3d 898, 904 (9th Cir. 2002).

       Plaintiff claims that Saunders and Scarsella used pepper spray against him for thirty to forty-five minutes, which suggests an intent to inflict pain or to punish. Saunders and Scarsella contend that they used pepper spray for a short period in an effort to secure order, after plaintiff lunged or jumped at them. The factual dispute created by these differing accounts defeats plaintiff's motion for summary judgment on this ground.

       2. <u>Cell Extraction</u>

       When a recalcitrant or resistant inmate is removed forcibly from a cell, the inmate "'may suffer bumps and bruises. . . .'" <u>Skinner v. Cunningham</u>, 430 F.3d 483, 489 (1st Cir. 2005). Plaintiff claims that all five defendants "forced their way into my cell and began to Punch and Kick me. . . ." [sic]. Compl. at 3. Correa and Caldero suggest they did not enter the cell; the other defendants aver that they used only minimum force to subdue the struggling plaintiff. Plaintiff has not countered the declarations of Correa, Caldero and Matthews with anything but his complaint and his sworn statement of undisputed facts, both of which state in conclusory fashion that the defendants attacked him. Compl. at 3; Pl.'s MSJ at 2. Specifically, plaintiff has not disputed the fact that he was resisting the defendants' attempts to handcuff him or attempted to identify what actions Correa, Caldero or Matthews took during the attempt to handcuff him.

       Because of the disputed evidence over the need for and the amount of force used to extract plaintiff from his cell, plaintiff is not entitled to summary judgment. Defendants Caldero, Correa and Matthews are so entitled, however, for plaintiff relies only on his "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence" in opposition. <u>F.T.C. v. Publishing Clearing House, Inc</u>., 104 F.3d 1168, 1171 (9th Cir. 1997). Plaintiff's statement says only that Caldero and Correa entered the cell, and does not describe Matthews' role in the punching and kicking he alleges occurs. This is not sufficient to defeat a motion for summary judgment.

3.  Transport To The Ground Floor

Dragging a shackled inmate and hitting a manacled inmate suggests a malicious and sadistic use of force and a violation of the Eighth Amendment. Plaintiff and Scarsella have explained the incident in which plaintiff was transported from his cell differently; their dispute over the material facts of this event precludes summary judgment.

Plaintiff also avers he was dropped as he was being carried down the stairs, but provides no detail, not even the names of those he believed had lifted his shoulders. Matthews notes he had to lay plaintiff on the stairs, but both he and Caldero deny dropping plaintiff or otherwise using force on him. Plaintiff's conclusory statement does not rebut these declarations; even his description of being dropped does not suggest that those carrying him acted with a culpable state of mind. Matthews and Caldero are entitled to summary judgment on this aspect of plaintiff's claim.

II. Motions To Compel

On April 18, 2005 and August 25, 2005, plaintiff filed motions to compel discovery from "defendants" without identifying the defendants from whom he sought discovery or the particular discovery he believed had not been provided, apart from a broad claim that the "defendants" had refused to comply with his requests for the production of documents and for admissions.

According to Rule 7(b) of the Federal Rules of Civil Procedure, a motion "shall state with particularity the grounds therefor, and shall set forth the relief or order sought." The rule's "particularity requirement" is designed "to give notice of the basis for the motion to the court and the opposing party so as to avoid prejudice, 'providing that party with a meaningful opportunity to respond and the court with enough information to process the motion correctly.'" Andreas v. Volkswagen of America, Inc, 336 F.3d 789, 793 (8th Cir. 2003). None of plaintiff's filings meet this standard, for none of them include sufficient information to permit the court "to process the motion correctly. The court cannot determine what discovery plaintiff seeks, whether

1  his requests for such discovery were objectionable or requested privileged information, or from
2  whom the discovery was sought.  Because these motions do not satisfy Rule 7(b), they will be
3  denied.

4  III.  <u>Motion For Default Judgment</u>

5  Plaintiff has filed a motion for an order directing a default judgment to be entered
6  against defendants Saunders and Scarsella.  Defendant Saunders filed his answer on March 18,
7  2005 and defendant Scarsella filed his on April 28, 2005.  Their filing precludes a finding of
8  default.  Fed. R. Civ. P. 55.

9  IV.  <u>Motion For A Protective Order</u>

10  Counsel for the defendants have filed a stipulated motion for a protective order.
11  The order is appropriate and will be approved.

12  IT IS HEREBY ORDERED that

13  1. Plaintiff's April 18, 2005 and August 25, 2005 motions to compel discovery
14  (docket nos. 23 & 51) are denied;

15  2. Plaintiff's motion for a default judgment (docket no. 21) is denied; and

16  3. The parties' stipulated motion for a protective order (docket no. 50) is granted.

17  IT IS HEREBY RECOMMENDED that:

18  1. Plaintiff's motion for summary judgment filed April 25, 2005, be denied; and

19  2. The motion for summary judgment brought by defendants Correa, Caldero and
20  Matthews on June 10, 2005, be granted.

21  /////
22  /////
23  /////
24  /////
25  /////
26  /////

1       These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fifteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:   March 2, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

2
edwa2584.57