1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10    MEL TYRONE EDWARD,

11              Plaintiff,                    No. CIV S-03-2584 LKK KJM P

12         vs.

13    S. SCARSELLA, et al.,                   ORDER AND

14              Defendants.                   FINDINGS & RECOMMENDATIONS

15    _____/

16              Plaintiff is a state prison inmate proceeding pro se with a civil rights action under

17    42 U.S.C. § 1983.  In his verified complaint, plaintiff alleges that the defendants attacked him

18    during a cell extraction, punching and kicking him after immobilizing him with pepper spray.

19    Plaintiff also alleges that defendant Scarsella punched him after he was immobilized on a gurney.

20    Complaint (Compl.) at 3-4.  Plaintiff and defendants Caldero, Correa and Matthews have now

21    moved for summary judgment.  Defendants Saunders and Scarsella have opposed plaintiff's

22    motion, but have not filed their own motions for summary judgment.  In addition, plaintiff has

23    filed a motion for a temporary restraining order and for a preliminary injunction.

24              On March 2, 2006, this court entered findings and recommendations,

25    recommending that plaintiff's motion for summary judgment be denied and that the motion filed

26    by defendants Caldero, Correa, and Matthews be granted.

1    On September 28, 2006, the District Court declined to accept the findings and

2 recommendations as to defendants' motion for summary judgment  and returned the matter to

3 this court.[1]

4 I.   Summary Judgment

5         A.   Standards For Summary Judgment

6         Summary judgment is appropriate when it is demonstrated that there exists "no

7 genuine issue as to any material fact and that the moving party is entitled to a judgment as a

8 matter of law."  Fed. R. Civ. P. 56(c).

9         Under summary judgment practice, the moving party
          always bears the initial responsibility of informing the district court
10        of the basis for its motion, and identifying those portions of "the
          pleadings, depositions, answers to interrogatories, and admissions
11        on file, together with the affidavits, if any," which it believes
          demonstrate the absence of a genuine issue of material fact.

12

13 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

14 nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

15 judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

16 to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

17 after adequate time for discovery and upon motion, against a party who fails to make a showing

18 sufficient to establish the existence of an element essential to that party's case, and on which that

19 party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

20 concerning an essential element of the nonmoving party's case necessarily renders all other facts

21 immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

22 whatever is before the district court demonstrates that the standard for entry of summary

23 judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

24 ───────────────

25        [1]  Although it appears that the district court agreed with this court's resolution of
     plaintiff's motion for summary judgment, the order remanded "the case" back to this court for
     further proceedings.  Accordingly, the court will again address plaintiff's motion for summary
26 judgment as well as considering the defendants' motion in light of the district court's order.

1       If the moving party meets its initial responsibility, the burden then shifts to the

2 opposing party to establish that a genuine issue as to any material fact actually does exist.  See

3 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

4 establish the existence of this factual dispute, the opposing party may not rely upon the

5 allegations or denials of its pleadings but is required to tender evidence of specific facts in the

6 form of affidavits, and/or admissible discovery material, in support of its contention that the

7 dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

8 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

9 of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

10 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

11 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

12 return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

13 1436 (9th Cir. 1987).

14       In the endeavor to establish the existence of a factual dispute, the opposing party

15 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

16 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

17 versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

18 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

19 genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

20 committee's note on 1963 amendments).

21       In resolving the summary judgment motion, the court examines the pleadings,

22 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

23 any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

24 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

25 court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

26 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

1  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

2  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

3  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

4  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

5  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

6  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

7         On August 6, 2004, the court advised plaintiff of the requirements for opposing a

8  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

9  F.3d 952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999), and Klingele v.

10 Eikenberry, 849 F.2d 409 (9th Cir. 1988).

11       B.  Factual Background

12        In June 2002, defendant Scarsella was in charge of C-Facility at California State

13 Prison-Sacramento (CSP-Sacramento).  Mem. P. & A. in Supp. of Mot. for Summ. J. by Def'ts

14 Caldero, Correa & Matthews (Def'ts' MSJ), Decl. of J. Caldero (Caldero Decl.) ¶¶ 2-3; Def't

15 Scarsella's Opp'n to Pl.'s Mot. For Summ. J. (Scarsella Opp'n), Decl. of Stephen Scarsella

16 (Scarsella Decl.) ¶ 1.  On June 8, Scarsella was informed that plaintiff had threatened an officer;

17 after meeting with plaintiff, Scarsella decided to  move plaintiff to administrative segregation.

18 Caldero Decl. ¶ 4; Scarsella Decl. ¶ 2.   Plaintiff was taken to his cell to pack his property before

19 moving.  Def'ts' MSJ, Decl. of A. Correa (Correa Decl.) ¶ 4.  After thirty minutes, plaintiff told

20 Correa he was not going to leave his cell; Correa and Caldero conveyed this information to

21 Scarsella.  Correa Decl. ¶¶ 5-6; Caldero Decl. ¶ 7; Scarsella Decl. ¶ 3.

22        Scarsella and defendant Saunders went to the door of plaintiff's cell and spoke to

23 him, but plaintiff refused to leave the cell.  Def't Saunders' Opp'n to Pl.'s Mot. for Summ. J.

24 (Saunders Opp'n), Decl. of Richard Saunders (Saunders Decl.) ¶ 3; Scarsella Decl. ¶ 4;

25

26

1    Compl. at 3.[2]  When plaintiff moved toward Scarsella and Saunders, they used pepper spray on

2    him.   Scarsella Decl. ¶ 4; Saunders Decl. ¶ 3; Correa Decl. ¶ 8; Def'ts' MSJ, Decl. of A.

3    Matthews (Matthews Decl.) ¶ 7.  Plaintiff avers that defendants used pepper spray on him for

4    thirty to forty-five minutes; Scarsella claims he used the spray in short bursts of one to three

5    seconds' duration each; Matthews estimates that the application of pepper spray did not last more

6    than ten minutes.  Compl. at 3; Scarsella Decl. ¶ 4; Matthews Decl. ¶ 7.

7                        When plaintiff still refused to come out, Scarsella ordered Saunders and others to

8    remove plaintiff from the cell.  Matthews Decl. ¶ 9; Saunders Decl. ¶ 4.  Scarsella was concerned

9    that the exposure to the pepper spray had given plaintiff an asthma attack.  Scarsella Decl.  ¶ 5.

10   Saunders entered first, using a protective shield to push plaintiff down on his bunk.  Saunders

11   Decl. ¶ 4; Matthews Decl. ¶ 10.  Saunders and Matthews then handcuffed plaintiff.  Matthews

12   Decl. ¶ 11; Scarsella Decl. ¶ 6.  Scarsella describes a "lengthy struggle" that preceded the

13   handcuffing; Saunders says that plaintiff was aggressive and "thrash[ed] about," but Saunders

14   used the minimum amount of force to subdue a "combative" inmate."  Plaintiff claims he was hit

15   and punched by all the defendants before, during and after the application of the handcuffs.

16   Scarsella ¶ 6; Saunders Decl. ¶¶ 4, 6; Compl. at 3.[3]  Correa avers he did not strike plaintiff and

17   suggests he was not in the cell during the extraction.  Correa Decl. ¶¶ 11-12, 16.  Caldero also

18   suggests he had not entered the cell and avers that he did not strike plaintiff.  Caldero Decl.

19   ¶¶ 12-14, 24.  Matthews denies striking plaintiff and claims to have used only the force necessary

20   to handcuff plaintiff under the circumstances.  Matthews Decl. ¶ 23.

21   /////

22

23          [2]  The court may treat plaintiff's verified complaint as an opposing affidavit.  McElyea v.

24   Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam).

25          [3]  Plaintiff has submitted what he describes as a sworn statement from Zuri Young, an
     inmate "ear and eye" witness.  Pl.'s Mot. for Summ. J. (Pl.'s MSJ), Ex. B.  However, this
26   statement was not submitted under the penalty of perjury and therefore is not admissible in
     support of plaintiff's motion.  Fed. R. Civ. P. 56(e).

1    Plaintiff still refused to walk after the handcuffs were on, so Matthews and
2  Scarsella and perhaps Saunders dragged plaintiff out of the cell.  Matthews Decl. ¶ 12; Scarsella
3  Decl. ¶ 6; but see Saunders Decl. ¶ 5 (saying he left the cell after plaintiff was handcuffed and
4  did not remove him from the cell).   Plaintiff was put in leg restraints.  Caldero Decl. ¶ 15;
5  Scarsella Decl. ¶ 6.  According to Caldero, Matthews and plaintiff, Scarsella grabbed the chain
6  connecting the handcuffs and began to drag plaintiff down the stairs.  Caldero Decl. ¶ 16;
7  Matthews Decl. ¶ 14; Compl. at 3.  Scarsella says he carried, but did not drag, plaintiff down the
8  stairs.  Scarsella Decl. ¶ 8.  Matthews and Caldero lifted plaintiff by the shoulders so he would
9  not hit his head.  Matthews Decl. ¶ 15; Caldero Decl. ¶ 17.  Plaintiff says he was dropped as he
10  was moved down the stairs, but Matthews and Caldero deny dropping him or seeing anyone else
11  drop plaintiff.  Pl.'s MSJ Brief at 3[4]; Matthews Decl. ¶ 16; Caldero Decl. ¶ 18.  Matthews
12  concedes he was unable to maintain his hold on plaintiff as they moved down the stairs, so he put
13  plaintiff down.  Matthews Decl. ¶ 17.  Correa says he did not participate in moving plaintiff
14  downstairs, but plaintiff avers that all of the defendants were involved in dragging him out of the
15  cell and, so it appears, down the stairs.  Correa Decl. ¶ 15; compare Compl. at 3.

16    Once on the ground floor, plaintiff was placed on a gurney.  Scarsella Decl. ¶ 9;
17  Matthews Decl. ¶ 18; Caldero Decl. ¶ 19; Compl. at 3.  According to Matthews and Caldero,
18  plaintiff and Scarsella traded insults.  Matthews Decl. ¶ 19; Caldero Decl. ¶ 21.  Scarsella struck
19  plaintiff twice in the face unexpectedly.  Matthews Decl. ¶¶ 20-21; Caldero Decl. ¶¶ 21-22;
20  Compl. at 3-4.  Scarsella denies hitting plaintiff.  He says plaintiff was thrashing on the gurney
21  and, worried that plaintiff would fall off, he put a hand on the gurney railing.  Scarsella Decl. ¶ 9.
22  He blocked plaintiff's head and  pushed it away because he feared plaintiff would bite him.  Id.
23  ¶ 10.
24  /////
25
26    [4] This brief was submitted under penalty of perjury and will be considered as a
declaration.

C. <u>Analysis</u>

Broadly speaking, "[a]fter incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986) (internal quotation marks omitted). Determining whether an Eighth Amendment violation has occurred depends on the context in which the action takes place. Deference is to be given to the quick decisions officers must make when responding to a confrontation with "riotous inmates." <u>Whitley</u> 475 U.S.at 320-22. A deferential standard applies even in the case of "a lesser disruption," so long as it is necessary for guards to use force to keep order. <u>Hudson v. McMillian</u>, 503 U.S. 1, 6 (1992). In the case of resistance, the determinative question is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm." <u>Id</u>. at 7.

The Ninth Circuit has relied on the <u>Hudson</u> factors in determining whether an officer's application of force was applied in a good faith effort to restore discipline. <u>Martinez v. Stanford</u>, 323 F.3d 1178, 1184 (9th Cir. 2003). These factors are: 1) the extent of the injury suffered by an inmate; 2) the need for application of force; 3) the relationship between that need and the amount of force used; 4) the threat reasonably perceived by the responsible officials; and 5) any efforts made to temper the severity of a forceful response. <u>Id</u>.

According to the Ninth Circuit, <u>Hudson</u> mandates that the <u>Whitley</u> standard apply in all cases of excessive force claims against prison officials. <u>Lemaire v. Maas</u>, 12 F.3d 1444-53 & n.2 (9th Cir. 1993). However, when there is no obvious disturbance, it is crucial to look at the two elements of the Eighth Amendment inquiry. These elements are: 1) the deprivation must be sufficiently serious, and 2) the officer must have acted with a sufficiently culpable state of mind. <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991). There is no requirement that the inmate suffer serious injury in order to make out a claim of an Eighth Amendment violation. <u>Hudson</u>, 503

/////

U.S. at 9. "When prison officials maliciously and sadistically use force to cause harm,

contemporary standards of decency always are violated." Id.

      1. Pepper Spray

> [P]epper spray is an instrument with which prison officers wield
> their authority, or force, and thus its use implicates the excessive
> use of force.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> Whether defendants' use of the spray was objectively harmful
> enough to violate plaintiff's Eighth Amendment rights turns in part
> on how long plaintiff was sprayed and whether he was adequately
> irrigated afterwards or left to suffer unnecessarily.  The parties
> dispute these issues.  They also disagree as to whether defendants
> sprayed plaintiff in a good faith effort to restore discipline or
> maliciously or sadistically for the purpose of causing harm.

Norton v. The City Of Marietta, OK, 432 F.3d 1145, 1154 (10th Cir. 2005) (internal quotation,

citation omitted); see also Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).

      Plaintiff claims that Saunders and Scarsella used pepper spray against him for

thirty to forty-five minutes, which suggests an intent to inflict pain or to punish.  Saunders and

Scarsella contend that they used pepper spray for a short period in an effort to secure order, after

plaintiff lunged or jumped at them.  The factual dispute created by these differing accounts

defeats plaintiff's motion for summary judgment on this ground.

      2. Cell Extraction

      When a recalcitrant or resistant inmate is removed forcibly from a cell, the inmate

"'may suffer bumps and bruises. . . ." Skinner v. Cunningham, 430 F.3d 483, 489 (1st Cir.

2005).  Plaintiff claims that all five defendants "forced their way into my cell and began to Punch

and Kick me. . . ." [sic].  Compl. at 3.  Correa and Caldero suggest they did not enter the cell;

the other defendants aver that they used only minimum force to subdue the struggling plaintiff.

      Because of the disputed evidence over the need for and the amount of force used

to extract plaintiff from his cell, neither plaintiff nor defendants are entitled to summary

judgment with regard to this aspect of plaintiff's case.

3.  Transport To The Ground Floor

Dragging a shackled inmate and hitting a manacled inmate, as the incident is characterized by plaintiff, suggests a malicious and sadistic use of force and a violation of the Eighth Amendment.  Scarsella explains the incident in which plaintiff was transported from his cell quite differently.  Their dispute over the material facts of this event precludes summary judgment.

Plaintiff also avers he was dropped as he was being carried down the stairs. Matthews and Caldero admit they were holding plaintiff's shoulders.  Matthews notes he had to lay plaintiff on the stairs, but both he and Caldero deny dropping plaintiff or otherwise using force on him.  Correa denies being involved in this portion of the incident at all, while plaintiff describes "the defendants" as being involved in moving him downstairs and then placing him on the gurney once they reached the day room. This dispute also precludes summary judgment on this question.

III.  Motions For Injunctive Relief

On December 26, 2006 and March 20, 2007, plaintiff filed a motion and an amended motion, respectively, for a temporary restraining order and for a preliminary injunction. In both, plaintiff complains of actions taken by correctional officers at Kern Valley State Prison, who are not parties to this litigation at Kern Valley State Prison.  Kern Valley also is not the locus of this litigation.  This court is unable to issue an order against individuals who are not parties to a suit pending before it.  See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 112 (1969).

IT IS HEREBY ORDERED that plaintiff's December 26 motion for a temporary restraining order and March 20, 2007 amended motion for a temporary restraining order are denied.

/////

/////

IT IS HEREBY RECOMMENDED that:

1.  Plaintiff's motion for summary judgment filed April 25, 2005, be denied; and

2.  Defendants Correa, Caldero and Matthews's motiont for summary judgment filed on June 10, 2005, be denied.

3.  Plaintiff's December 26, 2006 motion and March 20, 2007 amended motion for a preliminary injunction be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 30, 2007.

_____
U.S. MAGISTRATE JUDGE

2
edwa2584.57x2